UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| LESLIE NEBLETT, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | 1:13-cv-00515-NT |
| ) | |
| CONCORD FEDERAL PROBATION, ) | |
| PAUL DANIEL, AND DANIEL GILDEA, ) | |
| ) | |
| Defendants ) | |

**RECOMMENDED DECISION AFTER SCREENING COMPLAINT**

Plaintiff Leslie Neblett, a federal probationer, complains of selective prosecution, based on racial bias, in relation to the recent imposition of a special condition requiring that he reside in a halfway house. He sues federal probation officers Daniel Gildea and Paul Daniel, as well as the U.S. Probation & Pretrial Services Office for the District of New Hampshire, which he calls "Concord Federal Probation." This case was transferred from the District of New Hampshire because the judges of that district have all entered orders of recusal concerning the civil action. On December 19, 2013, the Court granted Neblett's motion to proceed in forma pauperis. However, Neblett's complaint is subject to screening pursuant to 28 U.S.C. § 1915(e)(2), 28 U.S.C. § 1915A, and District of New Hampshire Local Rule 4.3.[1] The issue is whether Neblett's

---

[1] Section 1915A applies to prisoner suits only and section 1915 imposes certain burdens on prisoners who proceed in forma pauperis. The Prison Litigation Reform Act defines "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. §§ 1915(h), 1915A(c). As a federal probationer subject to mandatory residency in a halfway house, Neblett qualifies as a "prisoner" for purposes of both section 1915 and section 1915A. Jackson v. Johnson, 475 F.3d 261, 265 (5th Cir. 2007) (concluding that state probationer subject to halfway house confinement is a prisoner for purposes of the PLRA); Witzke v. Femal, 376 F.3d 744, 752 (7th Cir. 2004) (determining that halfway-house resident who could leave the facility during the day but was locked inside at night was a prisoner for PLRA

1

Bivens-style[2] equal protection claim against federal officers is subject to the rule of Heck v. Humphrey, 512 U.S. 477 (1994), or a similar rule precluding maintenance of a civil action challenging the legitimacy of a federal sentencing proceeding that modified the conditions of the plaintiff's release to impose halfway-house confinement.  For reasons that follow, I recommend that the Court dismiss the action without prejudice.

## THE SCREENING DUTY

Federal law imposes on district courts the duty to review at the earliest opportunity any civil complaint "in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).  In its review, the court is to "identify cognizable claims" and otherwise "dismiss the complaint, or any portion of the complaint," to the extent that it is "frivolous, malicious, or fails to state a claim upon which relief may be granted" or "seeks monetary relief from a defendant who is immune from such relief." Id. § 1915A(b).  Similarly, Congress has directed that the district courts "shall" dismiss "at any time" cases or claims proceeding in forma pauperis, if the court determines that the action is frivolous, malicious, fails to state a claim, or seeks money damages from an immune defendant. Id. § 1915(e).

Dismissal in this case is appropriate because the Court presently lacks subject matter jurisdiction, which effectively renders the action "frivolous."  For reasons that follow, Neblett's action is simply "not cognizable" at this juncture and is therefore subject to sua sponte dismissal without prejudice.  White v. Gittens, 121 F.3d 803, 806-807 (1st Cir. 1997) (characterizing the holding of Heck v. Humphrey as generating a jurisdictional obstacle, vacating district court's

---

purposes).  However, even if Neblett is not a "prisoner" for purposes of the PLRA, his claim is subject to screening under section 1915(e)(2) because he is proceeding in forma pauperis.

[2]   Bivens v. Six Unknown Agents of the FBI, 403 U.S. 388 (1971).

dismissal on the merits, and remanding with instruction to dismiss without prejudice an action challenging state parole board's revocation of the plaintiff's parole).

## ALLEGATIONS AND PARALLEL PROCEEDINGS

Neblett complains that the defendants discriminatorily charged him with a probation violation based on racial bias and have thereby achieved an order directing him to a halfway house. Neblett alleges that he met a white probationer at the halfway house who said that Officer Gildea did not similarly seek to modify that probationer's terms of release when Gildea learned the probationer had snorted heroin. Neblett says he confronted Gildea with this and that Gildea told him that charging a probation violation is a matter of discretion. Neblett also alleges that Gildea told Neblett he looks like a drug dealer, expressed a negative inference about why Neblett had a thousand dollars on his person, profiled Neblett as a drug dealer in a hearing before Judge DiClerico[3], and threatened Neblett that he would not last long at the halfway house before they put him in jail. Neblett wants an investigation of the matter and asks for $2.5 million dollars. Neblett says he has met some excellent probation officers but believes that Gildea is a racist. He also alleges that Paul Daniel has directed racially offensive comments at him.

A review of the criminal docket reflects that the petition requesting the modification of the terms of Neblett's release was signed by both Gildea and Daniel. (See Case No. 1:10-cr-00102-JD, ECF No. 72.) The Court granted the motion and amended its judgment on November 20, 2013. (ECF No. 80.) On November 26, 2013, Neblett filed a motion for reconsideration. (ECF No. 81.) Most recently, on January 7, 2014, Neblett filed a motion for stay of the amended sentence pending resolution of his motion for reconsideration. (ECF No. 91.) Based on information provided therein, Neblett has not yet reported to the halfway house, but a bed is now

---

[3] The Court convicted Neblett of conspiracy to distribute cocaine.

available and the defendants have instructed him to report to the facility on January 9, 2014. Because Neblett also filed a notice of appeal, which he also sought to stay pending decision on his motion for reconsideration (ECF Nos. 82 & 83), the Court of Appeals has ordered that Neblett provide it with a status report by January 22, 2014, of any action taken by this Court on the motion for reconsideration (ECF No. 90).

## DISCUSSION

Neblett's complaint is subject to screening because he is a prisoner who seeks redress from government employees and because he is proceeding in forma pauperis. At present, the allegations in Neblett's complaint do not support the maintenance of a civil claim because his equal protection allegations are subject to review and, if necessary, fact finding by the sentencing court. Should the sentencing court determine that Neblett's allegations of selective prosecution were not waived and have merit, then Neblett may pursue a civil remedy at that time.

In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court held in the context of a section 1983 claim[4] challenging a state court criminal conviction on the ground of malicious prosecution that such a civil claim is subject to habeas procedure and must await a court order overturning the conviction before proceeding on the federal court's civil docket. Id. at 486-87. This rule applies whenever the civil action would require, for success, evidence "demonstrat[ing] the invalidity of the conviction." Id. at 481-82. The Court applied the rule to the malicious prosecution claim in Heck because one element the plaintiff was required to prove to sustain the claim was termination of the prior criminal proceeding in his favor. Id. at 484 (discussing the common law of malicious prosecution). A contrary rule, the Court reasoned, would allow

---

[4] Heck v. Humphrey concerned a section 1983 action against state actors. However, the rationale and rule of Heck is equally applicable to Bivens actions against federal officers. Colon v. Special Agent Connolly, 78 Fed. App'x 732 (1st Cir. 2003) (per curiam); Pandey v. Freedman, 66 F.3d 306 (table), No. 95-1038, 1995 WL 568490, 1995 U.S. App. Lexis 27529 (1st Cir. Sept. 26, 1995) (unpublished) (per curiam).

4

convicted prisoners to collaterally attack their convictions by means of a civil suit, contrary to the "hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." Id. at 485-86.  The Court stated its holding in the following terms:  "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87 (footnote omitted).

To determine whether the Heck rule applies, a court must inquire whether judgment in favor of the plaintiff "would necessarily imply the invalidity of his conviction or sentence." Id. at 487.  If so, then "the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." Id.  This prerequisite is generally known as the "favorable termination" rule. Id. at 499 & n.4 (Souter, J., concurring).  As construed in subsequent opinions, the rule extends to legal challenges that, if successful, "would necessarily demonstrate the invalidity of *confinement* or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81 (2005) (emphasis added) (holding that state prisoners' challenge to state parole procedures did not necessarily imply the unlawfulness of their continued confinement or result in an order for release and, consequently, their action was not subject to dismissal per Heck).

Although Neblett's action does not challenge his underlying conviction or the fact or duration of his sentence, it does challenge the legitimacy of his current confinement in a halfway house.  This fact makes the logic of Heck applicable to this case.  However, here the Court is presented with a claim of selective prosecution rather than malicious prosecution.  Unlike a

5

claim of malicious prosecution, "[a] selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." United States v. Armstrong, 517 U.S. 456, 463 (1996). The Supreme Court has not held that proof of selective prosecution necessarily invalidates a conviction. See id. at 461 n.2. Nor has the Supreme Court or the First Circuit Court of Appeals held that the Heck rule applies to selective prosecution claims. Nevertheless, the core rationale of Heck makes perfect sense in the context of the current claim, particularly in light of the "hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." Heck, 512 U.S. at 485-86.

     The standard of proof applicable to a selective prosecution claim is "demanding" and "a significant barrier" exists in regard to obtaining selective prosecution discovery in a criminal case. Id. at 463. The decision to prosecute generally rests entirely with the prosecutorial authority so long as there is probable cause to believe an offense has been committed. Id. at 464. In the instant case, Neblett does not contest the existence of cause to support a modification in the terms of his probationary sentence. Where it is evident that the probation officer had valid grounds to seek the modification, Neblett could only succeed with his selective prosecution theory if he could establish that the decision to prosecute was, in fact, "based on 'an unjustifiable standard such as race, religion, or other arbitrary classification.'" Id. (quoting Oyler v. Boles, 368 U.S. 448, 456 (1962)). This is a heavy burden. The Supreme Court has framed the inquiry in terms of a defendant's ability to clearly "demonstrate that the administration of a criminal law is 'directed so exclusively against a particular class of persons ... with a mind so unequal and oppressive' that the system of prosecution amounts to 'a practical denial' of equal protection of the law." Id. at 464-65 (quoting Yick Wo v. Hopkins, 118 U.S. 356, 373 (1886)). Proof of

selective prosecution requires evidence of both a discriminatory effect and a discriminatory motive.  Id. at 468.  Pleas for generous inferences of discriminatory motive are not lightly granted and must be backed up with meaningful factual assertions tending to show discriminatory impact and purpose.  Id. at 469-70.

The high standard arises in part from the fact that a prosecutor fulfills an executive department function and that courts must hesitate before interfering in the affairs of the Executive.  Id. at 465.  Here, the situation is modified by the fact that federal probation officers are judicial officers, not executive officers.  The Court has greater authority to oversee the conduct of probation officers and to establish judicial policy in this context.  On the other hand, the high standard imposed on selective prosecution claims also grows out of the fact that such a claim threatens a substantial, potentially unwarranted diversion of government resources.  Id. at 468.  That risk is no less in a case against probation officers.  There is every bit as much reason for a "rigorous standard for discovery in aid of such a claim" in light of the ease with which a claimant's discovery initiatives could interfere with the performance of an important federal function.  Id.

As discussed above, the Heck rule is in part informed by the nature of a malicious prosecution claim.  Such a claim requires a favorable termination of the underlying proceeding before the malicious prosecution claim will lie.  That is not the case when it comes to selective prosecution.  However, as other courts have recognized, it is difficult to conceive of a scenario "under which a court could conclude that the plaintiff [was] confined in violation of [his] equal protection rights, yet find that [his] confinement was nonetheless valid."  Rogers v. Ill. Dep't of Corr. Special Eval. Unit, 160 F. Supp. 2d 972, 977 (N.D. Ill. 2001).  See also Davis v. Tarr, No. 2:04-cv-00049-ERW, 2005 WL 2931959, 2005 U.S. Dist. Lexis 26484 (E.D. Mo. Nov. 3, 2005)

(applying Heck in the context of a selective prosecution claim);  Schwartz v. New Mexico Corr. Dep't Probation and Parole, 384 Fed. App'x 726, 730 (10th Cir. 2010) (unpublished) (observing that "[s]elective prosecution is generally a complete defense" and affirming the application of Heck in the context of such a claim based on "the availability of habeas relief for an individual in custody who shows that the revocation of his parole was discriminatory");  Swan v. Barbadoro, No. 1:06-cv-00458, 2007 WL 275979, 2007 U.S. Dist. Lexis 5671 (D.N.H. Jan. 24, 2007) (recommending that selective prosecution claim be screened pursuant to section 1915A(a)), adopted, 2007 U.S. Dist. Lexis 10833 (Feb. 13, 2007).

The Heck standard, as construed in subsequent Supreme Court opinions, directs the Court to inquire whether judgment in favor of the plaintiff "would necessarily demonstrate the invalidity of confinement or its duration."  Wilkinson, 544 U.S. at 81.  If, as Neblett alleges, Defendants Gildea and Daniel asserted the probation violation against Neblett and sought to impose halfway-house confinement on Neblett because Neblett is black, then Gildea's motion for modification was a deprivation of equal protection ensured by the Due Process Clause of the Fifth Amendment.  Pursuant to the Heck rationale, and to maintain a meaningful distinction between the Court's criminal and civil dockets, Neblett must obtain relief from the sentencing court before proceeding with his civil action.  Based on my review of the criminal docket, that is exactly what Neblett is attempting to do at this time in the context of a motion for reconsideration of the order granting the motion to modify the terms of his sentence.  (See United States v. Neblett, Case No. 1:10-cr-00102-JD-1, ECF No. 81, Motion for Reconsideration.)  So long as such relief is available on the criminal side of the docket, that avenue should be exhausted before Neblett resorts to civil litigation.  Certainly the criminal proceeding is the more appropriate proceeding in which to (1) determine whether the allegations

suffice to warrant discovery in opposition to the motion to modify and, if so, (2) perform the necessary selective prosecution fact finding per the standards set forth in Armstrong.[5]

## CONCLUSION

For the reasons set forth above, I recommend that the Court dismiss this action without prejudice.[6]

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

---

[5]   In Muhammad v. Close, 540 U.S. 749, 751-52 (2004) (per curiam), the Supreme Court held that a prisoner's action against a corrections officer for retaliatory prison discipline was not subject to the Heck rule because the action could not give rise to a decision invalidating his conviction or affecting the duration of his sentence. By comparison, here we address the significance of selective prosecution resulting in a court-imposed sanction of a special condition of release. The federal court's involvement in the sanction in this case, including by modifying its sentence, presents a different scenario than one involving only jailer-imposed discipline. Consequently, even if it is assumed for the sake of argument that such a change of probationary conditions is not the sort of change that concerns the validity of the underlying conviction or continued confinement, there are at least three good reasons to bar a civil action from going forward at this time. First, Neblett has a pending criminal matter that raises the very same allegations. Second, selective prosecution claims are not foreign to section 2255 proceedings, though presumably most section 2255 motions involving selective prosecution challenge the fact of conviction or the duration of the sentence. See, e.g., United States v. Assi, No. 3:05-cr-00079-WHB, 2008 WL 346079, at *9, 2008 U.S. Dist. Lexis 11923, at *23-24 (S.D. Miss. Feb. 6, 2008); Parris v. United States, Nos. 05-cv-74813, 04-cr-80260, 2009 WL 454630, at *6-7, 2009 U.S. Dist. Lexis 14161, at *13-14 (E.D. Mich. Feb. 24, 2009). It therefore makes sense to subject selective prosecution allegations to the habeas procedures when direct appeal is exhausted. Third, selective prosecution claims are waived if they are not pursued in the criminal case. See Taylor v. United States, 798 F.2d 271, 273 (7th Cir. 1986). For these three reasons, the criminal proceeding is the appropriate venue for this factual issue to be resolved and if Neblett succeeds in demonstrating entitlement to a selective prosecution hearing in that proceeding, he may be able to pursue his civil claim at a later date, depending on the outcome of the federal criminal proceeding.

[6]   As alleged, the selective prosecution occurred in October 2013. Assuming the claim accrued in October, sufficient time remains for Neblett to pursue his claim in the criminal case and to refile a civil action at a later date if such an action becomes viable. See Estate of Barrett v. United States, 462 F.3d 28, 38-39 (1st Cir. 2006) (indicating that state law determines the limitation period, but federal law determines when Bivens actions accrue); N.H. Rev. Stat. Ann. § 508:4 (prescribing three-year limitation period).
   It bears noting, of course, that the U.S. Probation & Pretrial Services Office, unlike the individual defendants, is shielded by sovereign immunity. Tapia–Tapia v. Potter, 322 F.3d 742, 745–746 (1st Cir. 2003). Nevertheless, in the absence of subject matter jurisdiction, dismissal should be without prejudice.

9

   Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

January 8, 2014       /s/ Margaret J. Kravchuk
               U.S. Magistrate Judge